IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LARRY W. KIRK,

        Plaintiff,                  No. 2:11-cv-0323 WBS EFB P

    vs.

HEINRICH, et al.,

        Defendants.             FINDINGS AND RECOMMENDATIONS

                              /

       Plaintiff is a state prisoner proceeding without counsel in an action brought under 42 U.S.C. § 1983. Defendants Heinrich and Salinas move for summary judgment. Dckt. No. 37. For the reasons that follow, the undersigned recommends that the motion be granted in part.

**I.    Background**

       This action proceeds on plaintiff's Eighth Amendment failure to protect claim against defendant Heinrich, and plaintiff's injunctive relief claim against defendant Salinas, Warden of Deuel Vocational Institute (DVI). Dckt. No. 7 (Apr. 20, 2011 Screening Order). Plaintiff's verified complaint concerns events that allegedly occurred at DVI. Dckt. No. 1 ("Compl.").

////

////

////

Plaintiff alleges the following:

> On 8-22-10 I was victimized by another inmate. I suffered several major injuries in which I have to have operations to correct . . . .
>
> On 8-16-10 and 8-20-10 I personally gave C/O Henrich notes to please move I/M Lockett out of the cell because he was making threats of bodily harm. Trying to pressure me and others . . . in this cell.
>
> The C/O did nothing to move him out and as a result of this negligence on 8-22-10 I was battered by I/M Lockett to the point I ha[d] to be sent out of the institution via ambulance and kept [and] was admitted for my injuries from 8-22-10 until 8-31-10.
>
> \*\*\*
>
> Please note I am disabled and confined in a wheelchair.

*Id.* § IV. As relief, plaintiff requests compensatory damages and an injunction requiring that the prison policy be changed to require a finding of compatibility before assigning an inmate assistant to a disabled inmate. *Id.* § V.

The following facts are undisputed: Plaintiff is a wheelchair bound inmate who was assigned an inmate assistant. Defs.' Stmt. of Undisp. Facts ISO Mot. for Summ. J. ("DUF") 7, 14-15; Compl. § IV; Pl.'s Opp'n to Defs.' Mot. for Summ. J. ("Pl.'s Opp'n")[1] at 3.[2] Defendant Heinrich was a correctional officer who worked with disabled inmates. DUF 2, 11. Plaintiff shared a four-man cell with inmate assistants Lockett and Wheeler. DUF 10, 15, 18; Pl.'s Opp'n at 3. Lockett was assigned as plaintiff's inmate assistant/wheelchair attendant. Decl. of Heinrich ISO Defs.' Mot. for Summ. J. ("Heinrich Decl."), ¶ 7; Pl.'s Opp'n at 2, 4. On Sunday, August 22, 2010, Lockett battered plaintiff, using both his fists and a part of plaintiff's wheelchair, causing plaintiff severe injuries. DUF 24; Pl.'s Opp'n at 2. On March 23, 2011, plaintiff was transferred to Salinas Valley State Prison. DUF 28; Dckt. No. 5 (Pl.'s Notice of

---

[1] Plaintiff's opposition is signed under penalty of perjury and reproduces section IV, the "Statement of Claim," from his complaint.

[2] Page numbers cited herein refer to those assigned by the court's electronic docketing system and not those assigned by plaintiff.

Change of Address).

There is no dispute that during the week of August 16, 2010, plaintiff informed Heinrich that he was having problems with Lockett and Wheeler, and that he wanted them moved out of his cell. DUF 17. Nor is there a dispute that in response, Heinrich removed only Wheeler from plaintiff's cell. DUF 18; Pl.'s Opp'n at 3, 7.

Heinrich maintains that plaintiff never told him he felt threatened by Lockett. DUF 22. Plaintiff, however, claims that he specifically informed Heinrich that Lockett was threatening him, stealing from him, and trying to force him to have sex. Pl.'s Opp'n at 2-3. Plaintiff also claims that he informed Heinrich that he feared for his safety and requested that Lockett be moved. *Id.* Plaintiff claims that for the next several days, he updated Heinrich on "what Lockett was continuing to do," and renewed his request to have Lockett removed from his cell. *Id.* at 3.

Heinrich admits that on Friday, August 20th, plaintiff again requested that Lockett be moved out of his cell. DUF 19. According to Heinrich, he advised plaintiff that there was no place to move Lockett at that time, and asked if plaintiff could wait to make the move later. Heinrich Decl. ¶ 11. Heinrich states that plaintiff agreed that the move could wait. *Id.* Heinrich, who did not work on weekends, claims he left on Friday believing that the two inmates could get along until a cell move could be completed. *Id.* ¶¶ 1, 10, 12, 15. According to Heinrich, plaintiff never told him that he feared for his safety if Lockett remained in the cell over the weekend. *Id.* ¶ 10.

Plaintiff has an entirely different account of his interaction with Heinrich on August 20th. Plaintiff claims he informed Heinrich that the situation with Lockett had worsened, that Lockett was trying to force him to have sex, and that he did not feel safe. Pl.'s Opp'n at 3, 6-7. According to plaintiff, Heinrich told him that he "would take care of it." *Id.*

It is undisputed that two days later, on Sunday, August 22nd, inmate Lockett battered plaintiff. DUF 24; Pl.'s Opp'n at 2. According to defendants, plaintiff "taunted" inmate Lockett prior to the attack. *See* DUF 23 (citing to a page in plaintiff's deposition transcript, where

3

plaintiff recalls that before Lockett assaulted him, plaintiff might have said "Tomorrow is going to be a good day because I'm getting rid of my wheelchair pusher."). On that same page of the deposition transcript, plaintiff testifies that after Lockett continued to demand sex, and right before Lockett's attack, plaintiff told Lockett to leave him alone and that he "hope[d] and pray[ed]" that Lockett would be moved from his cell the following day. *See* Defs.' Mot. for Summ. J. ("Defs.' MSJ"), Ex. E at 45.

## II.     Summary Judgment Standards

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant to the determination of the issues in the case, or in which there is insufficient evidence for a jury to determine those facts in favor of the nonmovant. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986); *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471-72 (9th Cir. 1994). At bottom, a summary judgment motion asks whether the evidence presents a sufficient disagreement to require submission to a jury.

The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims or defenses. *Celotex Cop. v. Catrett*, 477 U.S. 317, 323-24 (1986). Thus, the rule functions to "'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments). Procedurally, under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). If the moving party meets its burden with a properly supported motion, the burden then shifts to the opposing

4

party to present specific facts that show there is a genuine issue for trial.  Fed. R. Civ. P. 56(e); *Anderson.*, 477 U.S. at 248; *Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 819 (9th Cir. 1995).

A clear focus on where the burden of proof lies as to the factual issue in question is crucial to summary judgment procedures.  Depending on which party bears that burden, the party seeking summary judgment does not necessarily need to submit any evidence of its own.  When the opposing party would have the burden of proof on a dispositive issue at trial, the moving party need not produce evidence which negates the opponent's claim.  *See e.g., Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 885 (1990).  Rather, the moving party need only point to matters which demonstrate the absence of a genuine material factual issue.  *See Celotex*, 477 U.S. at 323-24 (1986). ("[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'").  Summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  *See id.* at 322.  In such a circumstance, summary judgment must be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.* at 323.

To defeat summary judgment the opposing party must establish a genuine dispute as to a material issue of fact.  This entails two requirements.  First, the dispute must be over a fact(s) that is material, i.e., one that makes a difference in the outcome of the case.  *Anderson*, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.").  Whether a factual dispute is material is determined by the substantive law applicable for the claim in question.  *Id.*  If the opposing party is unable to produce evidence sufficient to establish a required element of its claim that party fails in opposing summary judgment.  "[A] complete failure of proof concerning

5

an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322.

Second, the dispute must be genuine. In determining whether a factual dispute is genuine the court must again focus on which party bears the burden of proof on the factual issue in question. Where the party opposing summary judgment would bear the burden of proof at trial on the factual issue in dispute, that party must produce evidence sufficient to support its factual claim. Conclusory allegations, unsupported by evidence are insufficient to defeat the motion. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989). Rather, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue for trial. *Anderson*, 477 U.S. at 249; *Devereaux*, 263 F.3d at 1076. More significantly, to demonstrate a genuine factual dispute the evidence relied on by the opposing party must be such that a fair-minded jury "could return a verdict for [him] on the evidence presented." *Anderson*, 477 U.S. at 248, 252. Absent any such evidence there simply is no reason for trial.

The court does not determine witness credibility. It believes the opposing party's evidence, and draws inferences most favorably for the opposing party. *See id.* at 249, 255; *Matsushita*, 475 U.S. at 587. Inferences, however, are not drawn out of "thin air," and the proponent must adduce evidence of a factual predicate from which to draw inferences. *American Int'l Group, Inc. v. American Int'l Bank*, 926 F.2d 829, 836 (9th Cir.1991) (Kozinski, J., dissenting) (citing *Celotex*, 477 U.S. at 322). If reasonable minds could differ on whether the non-moving parties evidence is sufficient to rule in its' favor over the material facts in dispute, summary judgment is inappropriate. *See Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). On the other hand,"[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted). In that case, the court must grant summary judgment.

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken

6

as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.* If the evidence presented and any reasonable inferences that might be drawn from it could not support a judgment in favor of the opposing party, there is no genuine issue. *Celotex.*, 477 U.S. at 323. Thus, Rule 56 serves to screen cases lacking any genuine dispute over an issue that is determinative of the outcome of the case.

Defendants' motion for summary judgment included a notice to plaintiff informing him of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See Woods v. Carey*, 684 F.3d 934 (9th Cir. 2012); *Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), *cert. denied*, 527 U.S. 1035 (1999); *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

### III. Discussion

This action proceeds on plaintiff's Eighth Amendment failure to protect claim against defendant Heinrich and his injunctive relief claim against defendant Salinas. Defendants argue they are entitled to summary judgment because: (1) defendant Heinrich did not know that plaintiff faced a substantial risk of injury if he continued to share a cell with inmate Lockett; (2) defendant Heinrich is entitled to qualified immunity because he violated no constitutional right and his conduct was objectively reasonable; and (3) plaintiff's claim for injunctive relief against defendant Salinas is moot because plaintiff was transferred to another institution. *See generally* Defs.' Mem. of. P. & A. ISO MSJ ("Defs.' P. & A.").

#### A. Failure to Protect Claim

Under the Eighth Amendment, "prison officials have a duty to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (internal quotation marks, ellipsis, and citation omitted). However, "not . . . every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834. A prison official may be held liable for an assault suffered by one inmate at the hands of another only where the assaulted inmate can show

7

that the injury is sufficiently serious, *id.* at 834 (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)), and that the prison official was deliberately indifferent to the risk of harm, *id.* at 837. Thus, the relevant inquiry is whether prison officials, "acting with deliberate indifference, exposed a prisoner to a sufficiently substantial risk of serious damage to his future health." *Id.* at 834 (internal quotation omitted).

To be deliberately indifferent, the "official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.* at 842. The "obviousness of a risk," however, is not conclusive, and "a prison official may demonstrate that the obvious escaped him . . ." *Id.* at 843, n.8.

Here, the court must determine whether there is a triable issue as to whether defendant Heinrich violated plaintiff's Eighth Amendment rights by allowing plaintiff and inmate Lockett to remain in the same cell together. Defendants argue that Heinrich was not deliberately indifferent because he did not know that plaintiff faced a substantial risk of injury if he continued to share a cell with Lockett. To support this position, defendants contend that plaintiff requested Lockett as his wheelchair attendant and that they "seemed to get along" for months. Defs.' P. & A. (citing DUF 14, 16). Plaintiff, however, denies requesting Lockett as his wheelchair assistant, Pl.'s Opp'n at 2. Moreover, even if it is assumed that plaintiff's denial of this is not credible, an assumption that cannot be made on summary judgment, whether plaintiff did or did not request Lockett as his wheelchair attendant does not negate the claim of deliberate indifference. Neither does it necessarily establish whether the two inmates were getting along during the week of August 16, 2010 (when plaintiff alleges that he reported that he felt threatened by Lockett,), a predicate assumption to defendant's argument.

It is undisputed that plaintiff alerted Heinrich on August 16th that he and Lockett were not compatible, regardless of whether plaintiff had initially requested Lockett as his wheelchair attendant or if they were previously compatible. The issue before the court is whether Heinrich was deliberately indifferent to plaintiff's safety after that alleged complaint by allowing the two inmates to remain celled together.

Defendants also point to the fact that Heinrich moved Wheeler out of plaintiff's cell. *See* Defs.' P. & A. at 6 (citing DUF 17-18). Moving Wheeler and not moving Lockett in no way negates the claim that Lockett's presence posed a danger to plaintiff and that plaintiff had complained about feeling threatened by Lockett. Rather, the issue will turn on the credibility of the testimony of plaintiff and Heinrich over what plaintiff did or did not report to Heinrich about feeling threatened by Lockett. That simply cannot be determined on summary judgment.

To support his argument that he was not deliberately indifferent to a serious risk of harm to plaintiff, Heinrich declares that plaintiff never asked to "lock up" in an attempt to be moved away from Lockett. Defs.' P. & A. at 7 (citing DUF 20). However, it is undisputed that on at least two occasions in the days preceding Lockett's assault on plaintiff, plaintiff asked Heinrich to move Lockett out of the cell. DUF 17, 19. Whether plaintiff proposed alternative means to be moved away from Lockett is not dispositive of the question of whether Heinrich was deliberately indifferent to the allegedly threatening condition by failing to take some action to separate them. Again, plaintiff's version, if credited, shows that during the week of August 16, 2010, he made Heinrich aware on multiple occasions that Lockett was threatening him with bodily harm and that he did not feel safe. Pl.'s Opp'n at 2-3, 9. The essence of Heinrich's argument here reduces to the contention that plaintiff's version is simply not believable. But it is the province of the fact finder at trial to determine the credibility of plaintiff's testimony. A reasonable jury could credit his testimony and reasonably conclude that Heinrich was aware that Lockett, the inmate assigned to assist plaintiff, was instead a danger to plaintiff.

////

1          Defendants also stress their factual assertion that plaintiff agreed to postpone a cell move.
2   Defs.' P. & A. at 7 (citing DUF 27).   Plaintiff, however, disputes this, claiming instead that
3   Heinrich promised to "take care of" moving Lockett from the cell.  Pl.'s Opp'n at 3.  Apart from
4   the principle that the conflict is inappropriate for resolution on summary judgment, defendants'
5   evidence shows that plaintiff only agreed to postponing a cell move after Heinrich had told him
6   that "there was no place to move Lockett . . . ."  DUF 20.  Any decision by plaintiff not to
7   challenge Heinrich, an authority figure, on this point, is not dispositive as to whether Heinrich
8   disregarded a serious risk of harm to plaintiff.  This is particularly true if Heinrich knew, as
9   plaintiff's evidence suggests, that plaintiff did not feel safe because Lockett was making
10  unwanted sexual advances and threatening him with bodily harm.  Thus, even if plaintiff had
11  agreed to wait for a cell move, his assent would not absolve Heinrich of liability.  *See Robinson*
12  *v. Prunty*, 249 F.3d 862, 866 (9th Cir. 2001) (quoting *Farmer*, 511 U.S. at 833) ("Deliberate
13  indifference to the risk that an inmate will be harmed by other prisoners constitutes a violation of
14  the Eighth Amendment"); *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986) (Deliberate
15  indifference "does not require that the guard or official believe to a moral certainty that one
16  inmate intends to attack another at a given place at a time certain before that officer is obligated
17  to take steps to prevent such an assault.  But, on the other hand, he must have more than a mere
18  suspicion that an attack will occur.") (quotations and citations omitted)).

19         Defendants also suggest that plaintiff's "disrespect" of Lockett in front of others caused
20  Lockett's attack.  Defs.' P. & A. at 7.  They cite to evidence that before the attack, plaintiff said
21  to Lockett,  "Tomorrow is going to be a good day because I'm getting rid of my wheelchair
22  pusher."  DUF 23.  Whether plaintiff made that statement has little bearing on whether Heinrich
23  deliberately delayed addressing a known threatening condition posed by the two inmates being
24  housed together.  Furthermore, plaintiff testified at his deposition that any remarks he made to
25  Lockett prior to the attack were in response to Lockett's relentless sexual advances.  Defs.' Mot.
26  for Summ. J., Ex. E at 45:1-25.  Thus, to the extent defendants contend that plaintiff was the

10

initial aggressor, there is a genuine dispute over the context of whatever statements were made. As noted, the parties' version of what plaintiff did or did not report to Heinrich regarding feeling threatened prior to the attack by Lockett stands in stark contrast and is obviously disputed. If a jury credits plaintiff's testimony it could reasonably conclude that Heinrich was aware that Lockett was a danger to plaintiff and that the two should have been separated.

Lastly, defendants argues that Heinrich is entitled to qualified immunity because he did not violate plaintiff's clearly established constitutional right to be free from violence at the hands of another prisoner. Defs.' P. & A. at 8; *see Saucier v. Katz*, 533 U.S. 194 (2001). The argument for qualified immunity is predicated on defendants' version of the facts (i.e, that plaintiff never told Heinrich that he feared Lockett would assault him and that plaintiff's taunting of Lockett led to the assault), which plaintiff disputes. As set forth above, the evidence viewed in the light most favorable to plaintiff may establish a constitutional violation. Thus, the issue of qualified immunity is intertwined with the disputed issues of material fact regarding the alleged constitutional violation. Accordingly, Heinrich is not entitled to summary judgment based on qualified immunity.

### B. Injunctive Relief Claim

Defendants contend that plaintiff's claim for injunctive relief against defendant Salinas is moot because plaintiff was transferred from DVI to another institution. Plaintiff does not respond to this argument in his opposition brief and the court deems that failure as a waiver of any opposition to the motion as to this issue. *See* E.D. Cal. L. R. 230(l).

Furthermore, it appears that the request is moot. Plaintiff was transferred out of DVI on March 23, 2011. DUF 28; Dckt. No. 5 (Pl.'s Notice of Change of Address). His request that defendant Salinas change a DVI prison policy is therefore moot because he is no longer confined to that institution. *See Dilley v. Gunn*, 64 F.3d 1365, 1368 (9th Cir. 1995) (an inmate's transfer from a prison while his claims are pending will generally moot any claims for injunctive relief relating to that prison's policies). Accordingly, summary judgment on this claim must be

granted.

## IV. Recommendation

Accordingly, IT IS HEREBY RECOMMENDED that defendant's August 23, 2012 motion for summary judgment (Dckt. No. 37) be granted as to defendant Salinas and denied as to defendant Heinrich.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated: October 17, 2012.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE